## DEL RIO WATER CO. v. GRINER.

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1911.)

BILLS AND NOTES (§ 527*)—DEFENSES—PAYMENT—EVIDENCE.

In an action on a note given by the president of a corporation to raise money to pay interest on certain of its indebtedness, evidence *held* to require a finding that a subsequent check, drawn by the president in favor of another on the corporation's account, the proceeds of which were delivered to the president, was intended as payment of the note, and not as a gift by the corporation to him.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 527.*]

Appeal from Val Verde County Court; C. K. McDowell, Judge.

Action by John Hutto, for whom J. G. Griner was substituted, against the Del Rio Water Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Joseph Jones and Geo. M. Thurmond, for appellant. Boggess & Smith, for appellee.

FLY, J. This suit was instituted by John Hutto against appellant on a promissory note alleged to have been executed by Griner, as president of the water company, and payable to Griner, as an individual, for the sum of $298.66, and that the note had been assigned to Hutto by Griner. Afterwards Hutto asked to be dismissed from the suit, and that Griner be substituted for him, and that was done by the court. Appellant filed general and special demurrers and a general denial and pleaded payment, two years' limitation, and that if the debt had ever been acknowledged by the officers of the corporation it was ultra vires, and that if Griner ever had any claim he had transferred it to James McLymont. The cause was tried by the court, no jury being demanded, and judgment was rendered in favor of appellee for $297.35, with interest at 6 per cent. from August 4, 1906.

The facts in this case form a unique chapter in the judicial history of this state, and a recital of them becomes necessary to a full understanding of the points involved. In August, 1905, J. G. Griner, Ed. De Montel, and W. B. Garrett purchased the entire stock and plant of appellant, a private corporation, operating and owning a waterworks system in the town of Del Rio, from the Galveston, Harrisburg & San Antonio Railway Company, making a cash payment of $6,000, for which a note was executed to the Hondo National Bank, and executing to the railway company two notes for $5,500 each, one due August 10, 1907, and the other August 10, 1908. In order to pay interest on the notes, on August 4, 1906, Griner drew a check on the Del Rio National Bank in favor of the First National Bank of Hondo for $297.35, and on August 9, 1906, he, as president of the water company, executed a note for $298.66 to himself individually. It is alleged in the petition that the money paid on the interest was a loan to the company, but the evidence conclusively shows that the note was made to reimburse Griner for money paid by him to liquidate interest due by him on his promissory note. There was no evidence that the company borrowed any money from Griner for any purpose, or that it received any benefit whatever from it. It seems from the evidence that appellee was a candidate for election as county judge of Val Verde county in 1906, and on November 7, 1906, as president of the water company, he drew a check for the sum of $298.34 in favor of E. F. Howard, on the Del Rio National Bank, and Howard drew the money and then gave it to appellee, who used it in his campaign for the county judgeship. The check was drawn in favor of Howard, who was the agent of the Galveston, Harrisburg & San Antonio Railway Company, as well as secretary of the water company. Appellee testified that Garrett authorized the payment of the $298.34 as a gift to appellee for use in the county campaign. Garrett did not testify in the case, but De Montel swore that he had been president of the company since February, 1908; and further testified when the interest on the notes became due in August, 1906, he, Garrett, and Griner each paid $298.66, and agreed that they would pay themselves with the company's money as soon as it had any. He said he and Garrett had received their money. He testified further: "I never knew anything about the company giving Griner any money for campaign purposes until some time after I became president of the company, and I was going over the papers and accounts, and I came across that check, drawn by Griner, as president, in favor of E. F. Howard, for $297.35, and then made an inquiry about it, and was told that Griner claimed that it was a company contribution to his campaign fund for county judge. Griner never told me anything about it himself. I think I first learned about his claiming it for campaign funds after this suit was filed." Howard testified that Garrett told him that "if Griner needed that $300 that it would be all right for him to take it." The $300 referred to was evidently the money paid by Griner on the interest, for which he executed the note to himself, which forms the basis of this suit. It could not have referred to any other sum of money. Upon getting that mes-

---

sage, Griner drew the check in favor of Howard, who collected it, and Griner received the money from him.

We need not discuss the authority of the three stockholders to appropriate the funds of their corporation to the payment of their private debts. They owned the whole of the stock, and could perhaps use the funds of the corporation as they might see fit, and we will treat the matter as though the corporation owed appellee on the note executed by him to himself, but we conclude that the testimony shows that it was paid. This, we think, is clear. Appellee drew the check in favor of Howard after Howard had reported to him what Garrett had said, and, although he may have supposed that Garrett intended it as a gift, still the testimony of Howard showed that he intended it as a payment of the debt that the corporation owed Griner. Garrett said that it would be all right for Griner to take "that $300," and what $300 could be referred to, except the amount due on the note? No other $300, or other amount, is mentioned in the testimony, and nothing was said in the conversation that would point to any other $300. Howard said he did not know about Griner loaning the company any money. He simply told Griner what Garrett said, and it is remarkable that Griner did not draw the check for $300, but for $298.34, which lacked only a few cents of being the amount claimed to be evidenced by the note. It would be a miraculous coincidence if the money was not intended to pay the note. Garrett said to take the money to pay "that $300," and appellee took the principal of the note. It indicated that he knew what was meant by "that $300."

If Garrett had directed Howard to tell Griner to take the money of a water company, duly incorporated, and use it for campaign purposes, this court would be slow to place the stamp of its approval on such an unlawful diversion of the corporate funds from their legitimate purposes, but no such case is presented by the evidence. The evidence shows payment of the debt.

It is true that Griner testified that both Garrett and De Montel knew that he was to use the money for campaign purposes, but if they did that did not show that they were not paying a debt of the corporation. The statement that Garrett authorized a gift of the money to Griner is not borne out by the record. He does not contradict the testimony of Howard, who bore the only authority from Garrett for Griner to use corporate funds for campaign purposes. The only authority to take the money came through Howard, and he testified that Garrett did not tell him that the money was to be used in furtherance of Griner's campaign. Garrett said to Howard, "Tell Griner that if he needed that $300 that it would be all

right for him to take it," and Howard stated: "When I got home, I told Griner what Garrett had said, and he then made out the check for the $298.34, and I took it to the bank and got the money and gave it to Griner. Garrett never told me what the money was for; what I have stated is all that he told me about it."

The judgment is reversed, and judgment here rendered that appellee take nothing by his suit and pay all costs in his behalf incurred.